UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICHOLE K.,

                  Plaintiff,                     **DECISION AND ORDER**

      v.

                                       1:23-CV-00858 EAW

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____

## INTRODUCTION

Represented by counsel, Plaintiff Nichole K. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted, and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on December 2, 2020. (Dkt. 5 at 20, 281-87, 288-94).[1] In her applications, Plaintiff alleged disability beginning

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

January 15, 2019.  (*Id.* at 20, 281, 288).  Plaintiff's applications were initially denied on April 12, 2021.  (*Id.* at 20, 146-96).  A video hearing was held before administrative law judge ("ALJ") Kim Griswold on April 22, 2022.  (*Id.* at 44-80).  On July 19, 2022, the ALJ issued an unfavorable decision.  (*Id.* at 20-37).  Plaintiff requested Appeals Council review; her request was denied on June 28, 2023, making the ALJ's determination the final decision of the Commissioner.  (*Id.* at 6-14).  This action followed.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

## I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through March 31, 2023. (Dkt. 5 at 23). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 15, 2019, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: adjustment disorder with mixed anxiety and depressed mood, conversion disorder with panic disorder and psychogenic non-epileptic seizure disorder, and asthma. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairment of chondromalacia patella of the knees was non-severe. (*Id.* at 24).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 25). The ALJ particularly considered the criteria of Listings 1.18, 3.03, 11.02, 12.04, 12.06, and 12.07 in reaching her conclusion. (*Id.* at 25-29).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform the full range of work at all exertional levels, with the following additional limitations:

> [Plaintiff] can understand, remember, and carry out simple instructions throughout an ordinary workday and workweek with normal breaks on a sustained basis. [Plaintiff] cannot perform fast paced conveyor belt or assembly line work. [Plaintiff] can adapt to occasional change in the work setting. [Plaintiff] can tolerate occasional exposure to concentrated: dust, fumes, odors, gases, poor ventilation, and extreme cold. [Plaintiff] cannot tolerate exposure to hazards such as dangerous moving machinery and unprotected heights. [Plaintiff] cannot climb ladders, ropes, or scaffolds. [Plaintiff] can respond appropriately to occasional and superficial contact with the general public. [Plaintiff] can respond appropriately to occasional and superficial interaction with coworkers without teamwork or collaboration. [Plaintiff] can respond appropriately to supervisory directions and supervisory feedback for simple work-related matters.

(*Id.* at 29). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 35).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of routing clerk, photocopy machine operator, and linen supply load builder. (*Id.* at 36-37). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 37).

II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ erred in crafting the RFC because she (1) failed to explain how she accounted for Plaintiff's conversion disorder and stress-induced seizures, and (2) failed to tether her findings to specific medical evidence.  (Dkt. 6-1 at 1, 8-13).  The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

A.     **The RFC Determination**

Both of Plaintiff's arguments concern the ALJ's formulation of the RFC.   In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).   While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id*., an ALJ is not a medical professional, and therefore she "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence."  *Gail F. v. Comm'r of Soc. Sec.*,

No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

**B.      Plaintiff's Conversion Disorder and Stress-Induced Seizures**

Plaintiff's first argument is that the ALJ failed to build an accurate and logical bridge between the evidence and the RFC because she did not explain how the limitations included in the RFC accounted for Plaintiff's conversion disorder and stress-induced seizures. In response, the Commissioner contends that the ALJ properly considered the evidence in determining Plaintiff's RFC, including her ability to handle stress and her history of stress-induced seizures. (Dkt. 8-1 at 15-19).

In this case, the ALJ expressly discussed Plaintiff's treatment records and testimony reflecting that Plaintiff's psychogenic seizure disorder was associated with stress. Specifically, the ALJ noted Plaintiff's seizure activity consistent with psychogenic non-epileptic seizures in August 2017, August 2019, and December 2019 (Dkt. 5 at 26), as well as an August 2021 treatment record reflecting Plaintiff's report of recent seizure-like activity for the first time in six months (*id.* at 34). The ALJ noted that these incidents were reportedly induced by stressors in Plaintiff's life. (*Id.*). The ALJ also discussed Plaintiff's

testimony that her seizure attacks were triggered by stress. (*Id.* at 30 ("She reported her seizure attacks are triggered by stress.")).

In addition, the ALJ addressed medical opinion evidence from Susan Santarpia, Ph.D., and Isaiah Jordan, LMHC, in reaching her mental RFC determination.[2]

On April 5, 2021, Dr. Santarpia conducted a psychiatric consultative examination. (*Id.* at 590-94). In the psychiatric evaluation report, Dr. Santarpia noted Plaintiff's

---

[2]     Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). When a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at §§ 404.1520c(c), 416.920c(c).
        When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at §§ 404.1520c(a), 416.920c(a). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).
        The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at §§ 404.1520c(b), 416.920c(b). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.* Here, Plaintiff does not specifically challenge any error in the ALJ's consideration of the medical opinions of record.

description of her conversion disorder with seizures, which Plaintiff indicated was exacerbated by excessive apprehension and worry. (*Id.* at 590-91). Dr. Santarpia noted Plaintiff's account that she is able to dress, bathe, groom herself, do laundry, shop, and act at the primary caregiver for her three young children. (*Id.* at 592). Dr. Santarpia opined that:

> [Plaintiff] presents as able to understand, remember, and apply simple as well as complex directions and instructions, use reason and judgment to make work-related to decisions, interact adequately with supervisors, co-workers, and the public, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, regulate emotion, control behavior, and maintain well-being, maintain personal hygiene and appropriate attire, beware of normal hazards and take appropriate precautions within normal limits.

(*Id.* at 592-93). Dr. Santarpia concluded that the "results of the present evaluation do not appear to be consistent with any psychiatric problem that would significantly interfere with [Plaintiff's] ability to function on a daily basis." (*Id.* at 593). The ALJ explained that she found this opinion was persuasive because it was consistent with Dr. Santarpia's evaluation findings and the medical evidence of record. (*Id.* at 34).

LMHC Jordan completed a Mental RFC Questionnaire on April 20, 2022. (*Id.* at 858-62). LMHC Jordan indicated that Plaintiff had been seen once a month for counseling and every two to three months for medication management since February of 2021. (*Id.* at 858). LMHC Jordan indicated that Plaintiff was compliant with treatment, there were no concerns with her attendance, and that her daily stressors centered around her children's father and contact with Child Protective Services. (*Id.* at 859). LMHC Jordan opined that Plaintiff had no limitations in the mental abilities and aptitudes needed to do unskilled, semi-skilled, or skilled work. (*Id.* at 860-61). He further opined that she would miss about

one day per month due to her impairments or treatment but that she could engage in full-time competitive employment on a sustained basis. (*Id.* at 862). In concluding that LMHC Jordan's opinion was "overall persuasive," the ALJ noted that the finding that Plaintiff "would likely be absent from work once a month is inconsistent with his report that she has no significant psychiatric limitations and is not elsewhere supported in the record." (*Id.* at 35).

As noted, the RFC limited Plaintiff to jobs with "simple instructions throughout an ordinary workday and workweek with normal breaks on a sustained basis," with no "fast paced conveyor belt or assembly line work," occasional change in the work setting, occasional and superficial contact with the general public, and occasional and superficial interaction with coworkers without teamwork or collaboration. (*Id.* at 29). The RFC also indicated that Plaintiff could "respond appropriately to supervisory directions and supervisory feedback for simple work-related matters." (*Id.*). Plaintiff argues that the ALJ failed to explain how these limitations in the RFC address Plaintiff's conversion disorder and stress-induced seizures. The Court disagrees.

It is not disputed that "when stress affects a claimant's ability to function, the ALJ must address any limitations explicitly and uniquely for that claimant." *Donna N. v. Comm'r of Soc. Sec.*, No. 5:21-CV-01264, 2023 WL 2742076, at *14 (N.D.N.Y. Mar. 31, 2023). "Because stress is 'highly individualized,' [and] mentally impaired individuals 'may have difficulty meeting the requirements of even so-called "low-stress[] jobs,"' . . . the Commissioner must . . . make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work."

*Collins v. Colvin*, No. 15-CV-423-FPG, 2016 WL 5529424, at *3 (W.D.N.Y. Sep. 30, 2016) (quoting *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006)). "Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments." *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996).   Thus, "[a]n ALJ is required to specifically inquire into and analyze a claimant's ability to manage stress." *Collins*, 2016 WL 5529424, at *3 (citing *Haymond v. Colvin*, No. 1:11-CV-0631 (MAT), 2014 WL 2048172, at *9 (W.D.N.Y. May 19, 2014)).

While an ALJ's failure to explain or account for stress limitations in the RFC— particularly when opined by an acceptable medical source given great weight—can be an error that requires remand, *Booker v. Colvin*, No. 14-CV-407S, 2015 WL 4603958, at *3 (W.D.N.Y. July 30, 2015), here, no medical provider opined that stress limitations beyond those set forth in the RFC were warranted.   Moreover, "[c]ourts reviewing an ALJ's evaluation of stress-based limitations do not demand an exhaustive analysis of the issue. So long as the decision reveals that the ALJ considered and accounted for stress limitations—even if not in the most explicit terms—remand is not warranted." *Gomez v. Comm'r of Soc. Sec.*, No. 18-CV-96-FPG, 2020 WL 1322565, at *4 (W.D.N.Y. Mar. 20, 2020) (internal citation omitted).

Here, as noted, the ALJ reviewed and expressly discussed Plaintiff's history of conversion disorder and stress-induced seizures in assessing Plaintiff's RFC.   It was logical for the ALJ to conclude, based on the evidence of record, that the impacts of stress on Plaintiff's functioning could be accommodated by the limitations she included in the RFC,

limiting Plaintiff to simple, non-fast paced work with occasional changes in the work setting and limited social interaction.  In light of these restrictions, and the lack of any medical opinion evidence to the contrary, the Court finds that the ALJ adequately accounted for Plaintiff's stress-related limitations in her RFC finding.  *See, e.g., Blocker v. Saul*, No. 18-CV-6788F, 2020 WL 1047737, at *6 (W.D.N.Y. 2020) ("[T]he ALJ accounted for Plaintiff's stress limitations by incorporating into Plaintiff's RFC limitations to simple routine tasks, occasional interaction with coworkers and the general public, and low stress work defined as work involving only occasional decision making . . . . [S]uch limitations have routinely been found to adequately account for a marked limitation in dealing with stress." (internal quotation marks and citation omitted)); *Alexandrea R. R. v. Berryhill*, No. 18-CV-121, 2019 WL 2269854, at *7 (N.D.N.Y. May 28, 2019) ("The ALJ discharged his duty [to account for stress-based limitations] . . . by assessing a number of limitations in [the plaintiff's] ability to perform work-related mental tasks, and by including a number of specific restrictions in recognition of [the] plaintiff's ability to handle work-related stressors.").  Moreover, the positions identified by the VE of routing clerk, photocopy machine operator, and linen supply load builder, all are jobs with a specific vocational preparation ("SVP") of 2, which are positions that require "little or no judgment to do simple duties" and "can be learned on the job in a short period of time," and do not conflict with a low stress limitation.  *See* 20 C.F.R. §§ 404.1568(a), § 416.968(a); *see also Layne L. v. Comm'r of Soc. Sec*., No. 23-CV-217S, 2024 WL 2717500, at *6 (W.D.N.Y. May 28, 2024) ("The failure to include a more explicit stress limitation here is harmless because the occupations identified by the Vocational Expert (a marker, garment sorter, or

router) are unskilled and suitable for low stress work . . . . Thus, a stress limitation is unnecessary here.") (citation omitted)); *Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) ("It is well settled that the positions identified by the vocational expert, including mail clerk, photocopy machine operator, and collator operator . . ., are unskilled jobs that are suitable for claimants with limitations to 'low-stress' work.").

Accordingly, for these reasons, the Court finds that the ALJ adequately considered and accounted for Plaintiff's stress-based limitations.  Plaintiff has failed to explain why additional stress-related limitations were required and is not entitled to remand on this basis.

## C.     Support for RFC in Medical Evidence

Finally, Plaintiff argues that the ALJ failed to support the RFC determination because she did not tether her findings to any specific medical evidence.  Again, the Court disagrees.

As noted above, there is no requirement that an ALJ's RFC finding correspond to a single medical opinion.  *Matta*, 508 F. App'x at 56.  At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement

or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

While the ALJ may not rely on her own lay opinion in formulating the RFC, the fact that the RFC does not perfectly correspond to one medical opinion is not evidence that she has done so. *See Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("The fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'"); *see also Soropoulos v. Comm'r of Soc. Sec.*, No. 22-CV-8688 (RWL), 2023 WL 8448211, at *9 (S.D.N.Y. Dec. 6, 2023) ("ALJs may not, of course 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record." (quoting *Russ v. Commissioner of Social Security*, 582 F. Supp. 3d 151, 164 (S.D.N.Y. 2022))). The ALJ is free to base her RFC findings on the portions of the various medical opinions that she found persuasive, along with the other evidence of record.

Here, it is readily apparent that the ALJ did not simply rely on her own lay opinion in making an RFC finding. In formulating the RFC assessment, the ALJ considered the objective medical evidence, Plaintiff's treatment history, allegations, and the opinions of physicians. That the RFC is more restrictive than the limitations opined by Dr. Santarpia does not demonstrate error. *See Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-1344 EAW, 2020 WL 473618, *5 (W.D.N.Y. 2020) (holding that "[p]laintiff's argument that the ALJ based her highly specific RFC based upon her own lay opinion necessarily fails[;] [i]t is clear that the ALJ fashioned her RFC finding by referring to [the consultative examiner's opinion] and incorporating additional restrictions based on [p]laintiff's own testimony");

- 14 -

*see also Catalfamo v. Berryhill*, 2019 WL 1128838, at *2 (W.D.N.Y. 2019) (rejecting argument that ALJ improperly substituted his own lay opinion where ALJ gave "little weight" to two medical opinions and "impose[d] more restrictions than th[ose] two opinions suggested were necessary").

Plaintiff does not identify any particular portions of the RFC that she contends are unsupported.  Rather, her arguments amount to a disagreement with how the ALJ weighed the evidence, which is within her province to do.  *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also Elizabeth P. v. Comm'r of Soc. Sec.,* No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *10 (W.D.N.Y. June 3, 2024) ("While Plaintiff may disagree with the ALJ's consideration of the medical evidence of record, that does not mean that the ALJ was relying on his own lay opinion in assessing Plaintiff's RFC or that the RFC finding is not supported by substantial evidence."); *Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec*., No. 19-cv-9253 (AT) (BCM), 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("However, the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."), *adopted*, No. 19 Civ. 9253 (AT) (BCM), 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021).

Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).  The ALJ reasonably concluded that Plaintiff failed to meet her burden in this case.  As such,

the RFC assessment in this case is consistent with the record and is supported by substantial evidence.  Accordingly, neither reversal nor remand is warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 17, 2024
        Rochester, New York